Good morning, Your Honors. Nicholas Markey on behalf of Mr. Heraclio Robles-Ixtlahuac. May it please the Court. This is an appeal from the BIA and the immigration judges, their denial of a motion to continue as well as the denial of a request for release of cancellation or removal. The, oh, and I apologize, one minute for rebuttal. The, I think the facts are fairly important to this issue of the continuance. Mr. Robles was detained back 12-13-2011. He had his first immigration hearing in detention. His second hearing was on January 6, 2012, where he was released and set for an out-of-custody master. That first out-of-custody master was 1-16-2013. It was reset again for the submission of a application for relief, which was cancellation or removal. On 3-12-2014, an individual hearing was set for March 13, 2015. What is the, what is the prejudice? You know, what, how did this harm your client not having the continuance? The prejudice, Your Honors, I think is quite clear. Counsel came in on the day of the individual hearing, indicated that she has had a rough time, mental health issues, anxiety. She was homeless. She said she wasn't prepared to file or proceed with the case. And in this case, it's clear from the record she wasn't. There was no pre-hearing statement that was filed. What, what additional evidence would you now bring forward? I would bring forward, Your Honor, a medical, mental health evaluation of the qualifying relatives. There was never one that was done. You have to show extreme and extreme. Has that, has that now been done? In other words, have, did you proffer to the BIA this is what we were unable to show and this is what we would show? No, because BIA is not a fact-finding agency. The BIA could remand it. But again, when you ask for a remand, that may be futile. Here, we're asking that you're saying, what was the prejudice? Why wasn't anything submitted? And what we're saying is what to be submitted would be with the immigration judge so he could hear the evidence. Well, right. But I mean, the BIA, I think, pointed out that, that your client hadn't submitted to the BIA an indication of what he would provide. And is your position that you didn't have to do that? Number one, he did put that in his brief. They did mention the mental health examination and saying, the problem we have, Your Honor, is with these cases that last two, three, four, five years, if you get one mental health examination, say within six months of your hearing, great. But what happens when that hearing isn't set for two or three or four years? When do you get it? And we don't know when we're going to get it. As I recall, the IJ here said, well, the next available date is in 2000 or something. 2020, he said. 2020, which was quite a ways down the road, right? It could have been, Your Honor. But here's the problem with that. They had bumped this case for what they said was a priority case. If the judge wanted to set this case, he could have set out at 2020 and then moved it back in. So his reliance on this myopic focus on the calendar was inappropriate. He didn't even discuss the decision of denying the motion to continue. The relief you want on the denial of the continuance is a remand and remand to the IJ? To the IJ, yes, Your Honor. So we can present the mental health information that both the immigration judge spoke about, as well as opposing counsel has said in her opening brief, or her responding brief, that there was no mental health evaluation that was conducted. You make one legal argument. That is that the IJ did not, the agency or the IJ did not consider the aggregate harm to the children. There were five children, I believe. Is that right? That's correct, Your Honor. So what was wrong with what they did? Well, it should have been a more thorough analysis of all of the harm to each one independently. Here, the IJ did the first three older children than the two older children. And we don't think that that's not sufficient enough. You must look at each individual qualifying relative as to each fact. Isn't what he did was they were in the same age range. They had the same individual with whom they lived, with whom he interacted, and that sort of thing. So what's the prejudice here? The prejudice is the insufficient facts to each qualifying relative. Here, the judge grouped them in the older and the younger. Here, he said the older live with the grandparents. And that was true. Each of them lived with the grandparents. That's true. So that's an individual determination. But what ties into the motion to continue was there was no testimony about how the children related with the grandparents, whether the grandparents, the qualifying relatives were taken care of by the grandparents. Nothing from the grandparents that said anything about how the kids felt about their father, how the separation would affect them. Nothing like that. So I thought your argument was that they needed to look at the totality of all of them. You do look. Not just on an individual basis. You can do that. I mean, certainly you do that. But you also need to look at the harm in the totality of the circumstances. That is, you look at the aggregation. And I agree with you can also look at that, but you also have to take the individual. I understand that, but. So what's the proper analysis in your from your perspective, you just look at each individual and that's it. Each individual, and then you can move to the totality of the circumstances. In this case, if you were kind of making a five negatives equal a plus, if there's not really sufficient background or information to make that determination that you How do you how does cumulative and help you? Well, that's the problem with this case itself. We don't have enough information to help us about how the qualifying relatives would suffer their harm. Here, you don't have any mental health information. You had the mother of the two youngest children testifying about how they would feel, but that was the extent of it. There needs to be more and that ties into the motion to continue that was denied. Counsel said she wasn't prepared to go forward. She said she wasn't prepared to go forward because she was having mental health issues and had been homeless for a while. She asked for 45 days, which is more than reasonable in this context to put on a case. You can get some experts. You can get the grandparents to come in and testify. There was no pre hearing statement. We didn't have declarations from the grandparents. We didn't have declarations from teachers, things like that. I ask you this, from your perspective, what you want is for us to say that there was an abuse of discretion in not granting the continuance and remanding it back to the agency with directions to send it back to the IJ to pick up from there. Yes, that's what I want. Is that what you're asking for? That's what I want. But we don't need to address anything else. If we agree with you on that, you're home free, so to speak. I would agree with that because I can't establish the burden for the cancellation removal because I don't have the facts that were submitted by the counsel that she didn't submit. Whose obligation is this, I guess? Because when we're looking at a due process violation, we're asking, is there prejudice? And you're representing that there are things that you would try to do and develop. But I think from the agency's perspective, the BIA's perspective, this wasn't provided to them. Well, the government argues that she provided letters. She provided documents. The government also maintains that she didn't have any information about the mental health and how that will affect. Clearly, that's prejudicial if you don't have that type of evidence of emotional mental health evaluations, how the children are doing at school, things like that. All the IJ had here was the petitioner's testimony about how he paid money and about how he saw the children. And Vasquez-Marico also testified. Pardon me? Vasquez-Marico also testified about the children and the situation and what the relationship was. Right. But I'm saying that the prejudice is counsel could have gotten an evaluation to address those issues. It's a high burden for the for the respondent or the petitioner to establish the relief. And most of the time, if not all, the immigration judges require some sort of evaluation on your qualifying relatives. And here we didn't have it because counsel couldn't couldn't get it for whatever. Well, for the reasons she said, she couldn't function properly. And that's where we say the prejudice is. We'll give you some time for rebuttal. But before you sit down, the BIA seem to understand your argument to be on the on the aggregation of harms that what you were asking was that the harm be aggregated essentially across qualifying relatives. That seems to be how they interpreted your position. In other words, that you would take the the harm experienced by one, two, three people and you would kind of combine them all together. Is that your argument? My argument is you must look at each independent qualifying relative first and then get all of those facts. And then at a certain point, you can step up to take the aggregate. But the case law seems to indicate that you should look at each qualifying relative and the harm to that relative. Well, what if what if for each qualifying relative, it's not exceptional and extremely unusual hardship? Do you then stop there or would you then actually sort of add them all together and come up with some composite hardship? If you don't establish it per the individual, I don't know how you can get to the aggregate. That's my my argument is you first have to look at the individual. You know, the way I read some of the BIA cases, they don't seem to agree with you. I argue I would agree with that. They don't agree with me. And that's why I'm saying it should be changed. I'm sorry. That's I'm saying they don't agree with me. I agree. Well, I'm not sure what what I what to make of your statement. I mean, as I read the BIA's decision, you can aggregate. And as I response to it, just the question that the judge just asked you. And what I'm saying is you can aggregate once you take into each individual qualifying relative here. The immigration judge didn't do that. He just lumped them up two groups and said the financial aid is not sufficient. Your answers are somewhat confusing, just because I would have thought what your argument was, was that we will look and see what each hardship was. And if even if it doesn't rise to the level of of exceptional and extremely unusual, nonetheless, when you have multiple relatives, we can kind of stack them and conclude from that that that everyone has experienced a hardship that qualifies. I understand. OK, why don't we leave you two minutes for rebuttal? We'll hear from the government. Good morning. Can you can you hear me? We can. Good morning. Yes. Thank you. Thank you, Mona Yusuf for the U.S. Attorney General. And I just want to take a quick thank you to opposing counsel and to the support for allowing me to appear remotely today. The court should deny this petition here. The IJ properly applied the BIA's en banc decision in Montreal to conclude that the petitioner here did not establish that his removal would result in hardship substantially beyond the ordinary hardship that is limited to truly exceptional circumstances. But I want to take a quick minute to respond to what counsel has been talking about in terms of the continuance. This case was he first filed his cancellation removal application in 2013. He submitted documents then he submitted documents again a year later. And then in 2015, the court did extend continue his removal proceedings from 2015 to 2017. That was plenty of time in order for any mental records or medical records to be submitted in the record. Unfortunately, his counsel had a problem in June of 2017. That was only a month or so before the hearing. But up until then, all these documents should have been requested. And even if they now believe that there are documents that should be provided, they've had ample time to provide those through a motion to reopen to the board to say, here, these are the documents. Did the IJ during that interval that you just described? Yes. Does the IJ impose any deadlines for getting the work done? I don't believe so. And submitting matters to the court? I honestly don't remember from the transcript. Usually what IJs do is that they at least allow maybe 15 days before the trial date to submit your documents. 15 or 30 days is typically what I've seen in most cases. And do you recall if there was any such deadline here? I do not recall. I am sorry, Your Honor. Well, it sounded like her personal circumstance, that is, the lawyer's personal circumstances were pretty serious. Am I misreading the record there? No. I don't want to downplay what she probably went through. They said she was homeless and she was having mental problems. But she also said when she said that she wasn't ready, that was in response to the IJ asking if there were any documents she said she wanted to submit. And she said, no, I'm not ready. I don't have anything. But the odd thing is, later on in the hearing, she actually did submit some documents. And she did ask the proper questions when the petitioner was on the stand and the petitioner's girlfriend was on the stand. They asked about the children. They asked about how much money he provides, how often he sees them. He asked if there was any medical problems. They asked the mother of the two younger children if there were medical problems. And she said no. So I don't see. I understand that what took place after the request for continuance was denied. But it seems like it was a reasonable request under the circumstances. Well, I believe that the board- Wasn't asking for an extensive period of time. And the IJ just came back and said, well, the next available date is, what was it, about a year and a half out? I think it was three years out. Three years out. It was three years out. That's not her fault, is it? No, absolutely not. And I will say that the board did acknowledge that. They did not rule on the matter of whether it was an abuse of discretion. They said that they didn't like the fact or they were uncomfortable with the fact that the only reason that the IJ gave was the timing. Because I guess the docket was so booked up, you couldn't get another hearing for another three years. We've said that, too, in our opinions, that we don't look favorably upon timeliness as the need to get it done when there are circumstances that suggest that a continuance is probably worth, you know, is meritorious. Well, that said, to get a continuance, you also have to, one of the factors is to prove what evidence you would need or you're going to submit in order to justify the continuance. And that was never really done here. So if maybe if the opposing counsel had said, well, I still need to go get medical records or something like that, maybe the IJ would have changed their mind. But that wasn't the argument that was made in front of the IJ. And like I said, the board didn't really put their stamp of approval on the fact that it was only about the three years of timing. But they did say there is no prejudice. And even in his briefs before the BIA and even now, there's been no mention about what documents would be brought. This is the first I've heard about a mental evaluation or anything. And in that case, they still could have filed a motion to reopen over that span of time too. Would you address the question of dealing with the children in group of younger children and older children as opposed to each individually? Yes, the IJ here did do it in two different groups. But I like I think of it as two different households. And the product of the agency's decisions are the product of the way this case was argued. He argued that he saw his three older kids. He saw them once a month. They lived together. They were supported by grandma. He provided about $1,900 a year for the three of them in child support. Then they had the younger children, again, another household. So the mother there testified. She's trying not to get the kids too emotionally attached. That's why he doesn't live in that household. So what you're really dealing with here is five qualifying relatives in two different households, neither of which Petitioner belongs to. And there's no question that they might not have as much financial aid if Petitioner doesn't move to Mexico because his earnings won't be as great as they are here. And his kids will probably miss him. But those are common hardships. And even when you aggregate those two households together, you still have common hardships that you can't aggregate to make exceptional and extremely unusual hardships. What you need is there needs to be something unusual about the hardship to at least one of the qualifying relatives in order to reach that standard. Otherwise, you can have five kids in five different states and say, you know, I provide a little bit of money to all of them. And I talk to them, you know, every once in a while. But that really doesn't add up to the hardship that we're looking at, say, in Racine, where there's a single mother. All the kids are going to go move back with her. She's going to be by herself because her LPR mother is still in the United States. So she won't have her backup caretaker. So she's solely responsible for those four. Well, there's six kids, four of them are U.S. citizen children, but her hardships affect them. So it's not that they aggregated the hardships of mom, grandma, and the kids. They just saw how all the hardships of mom and grandma or not having grandma around to take care of them affected those four children. Let me ask you this. Would you agree that the board has recognized the use of aggregation in some circumstances? I mean, you just pointed to Racine. Yeah, I mean, they did. And they actually said that in this case, too. They said, let's see, there's the first sentence where they're basically affirming the IJ's decision. And I argue that the IJ did get that right. And then they're responding to Petitioner's argument in his brief. And that time he argued that they should have aggregated household number one and household number two, which the IJ actually did do in his opinion. And then they said the immigration judge and we consider the hardship in the aggregate. So they're saying that that was done in this case. And that is the proper standard. What do we mean by that, though? I guess because it could mean one of two things. It could mean for each person, we aggregate all the different types of harms they would experience, financial, educational, emotional, health, all these things. Yes. Or it could mean we take an aggregation of multiple people and we look at the harms to person one, two, three, and four, and we combine those. What do you understand the BIA to be saying here in both the case and in its other decisions? I mean, that's a very good question. If you look at Monreal, they actually do have two different households in that case. There's a household with the kids and there's a household of the LPR parents. And at the end of the decision, they said there's going to be some financial and emotional hardship to the kids. There's going to be some emotional hardship to the parents if the alien is removed. And at the end, they said they neither established hardships to the children or the parents. So it looks like there they're not aggregating the two households together. But in Racine, it's like I said, there's one household. I think it's another way of saying totality of the circumstances. If you were to have at least one relative that has something unusual, whether it be a medical condition that can't be taken care of in Mexico, or one of the LPR parents absolutely is solely dependent on the alien who is going to be removed, your focus is basically on that relative. But that doesn't mean you can't consider the other factors involved to the other people. And I hope that made a little bit of sense. And please let me know if I need to clarify. I apologize. No, I appreciate the finesse with which you just explained your position there. Thank you. It looks like I'm out of time unless anyone has any questions. Okay, hearing none, I want to thank you for your presentation. And we'll hear two minutes of rebuttal. Thank you for your time. I think, Your Honor, the only issue I want to address is the continuance that was denied. And I think counsel's right. I don't believe that there was a scheduling order issued by the judge to set dates for things to be completed. And that is a problem. Typically, I think it's a 30-day filing deadline with the practice manual. And because counsel had such, you know, stress and emotional distress and her personal problems, she couldn't make that. So I think that's what the prejudice is. She couldn't get it together to get documents that she needed. That's all I have. Okay, thank you. We thank both counsel for the briefing and argument. This case is submitted.
judges: McKEOWN, PAEZ, BRESS